Michael D. VAN DEELEN, Plaintiff,

v.

SHAWNEE MISSION UNIFIED SCHOOL DISTRICT #512, Karl Krawitz, and Keith Burgat, Defendants.

No. CIV.A.03–2018–CM.

United States District Court, D. Kansas.

Feb. 18, 2004.

Michael D. Van Deelen, Eudora, KS, pro se.

Michael K. Seck, Fisher, Patterson, Sayler & Smith, LLP, Overland Park, KS, for Defendants.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

Plaintiff Michael D. Van Deelen, appearing pro se, brings suit against defendants Shawnee Mission Unified School District # 512 (the School District defendant), and Karl Krawitz and Keith Burgat (the individual defendants), alleging violations of the First and Fourteenth Amendments to the United States Constitution. This matter is before the court on defendant Shawnee Mission Unified School District # 512, Karl Krawitz and Keith Burgat's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 98); defendant Shawnee Mission Unified School District # 512, Karl Krawitz and Keith Burgat's Amended Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 100); plaintiff's Motion for Continuance (Doc. 103); plaintiff's Motion to Strike Portions of Defendants' Amended Motion to Dismiss or in the Alternative Plaintiff's Motion to Amend Complaint (Doc. 104); defendants' Motion to Review and Objections to Magistrate Judge's Order (Doc. 124); and plaintiff's Motion to Review and Objections to Magistrate Judge's Order (Doc. 136).

## I. Facts

As alleged in the Second Amended Complaint, plaintiff's son, Matt Van Deelen, broke his leg during football practice at Shawnee Mission West High School (SMWH) on October 17, 2000. Plaintiff asserts that Matt received no medical attention from any of the coaches present. Plaintiff subsequently complained to defendant Krawitz, SMWH principal, and told defendant Krawitz that he would file suit against the School District and its employees if defendant Krawitz failed to satisfactorily resolve the problem. Plaintiff alleges that in December 2000, in response to plaintiff's inquiry, defendant Krawitz told plaintiff that there would be no investigation and that, if plaintiff pressed the matter, Matt's athletic career at SMWH would be over.

Matt played football again in 2002. Before the October 18th game, Matt became ill, and a physician was summoned, who diagnosed Matt with an elevated heart rate. Notwithstanding, coach John Krug inserted Matt into the game. Plaintiff met with defendant Krawitz several days later to express his displeasure over Matt being inserted into the game. Plaintiff alleges that defendant Krawitz refused to investigate the matter and that, in response, plaintiff threatened to file a lawsuit.

On October 28, 2002, defendant Krawitz prohibited plaintiff from entering any School District property, except to drop off and pick up his son at SMWH.

On November 19, 2002, SMWH held an academic awards banquet, which plaintiff claims only his wife and son, Matt, attended. The next day, plaintiff alleges that defendant Krawitz published a letter or memo to School District employee Gene Johnson "and others," accusing plaintiff of attending the awards banquet. The letter also accused plaintiff of refusing to accept three certified letters, violating the verbal directive of Johnson to remain off campus, violating warnings given to plaintiff by school security, having a bad record of behavior, being out of control, personally attacking unnamed persons on multiple occasions, being the most out-of-control parent defendant Krawitz had witnessed in 31 years of education, and being so threatening to defendant Krawitz that defendant Krawitz physically feared plaintiff. Plaintiff alleges that defendant Krawitz published another letter to School District personnel on November 22, 2002, accusing plaintiff of out-of-control behavior, making

threats, and using profanity during a certain meeting. On December 2, 2002, plaintiff filed a civil suit against defendant Krawitz and the School District for negligence, defamation, invasion of privacy, and intentional infliction of emotional distress.

On January 9, 2003, defendant Burgat, SMWH associate principal, called Matt into his office and suspended Matt from school for five days. Plaintiff alleges that Matt was suspended without cause and without due process. Defendants allege that Matt was suspended for "mooning" students at a wrestling meet at Lawrence High School (LHS) on January 7, 2003. Defendants were acting upon a statement from Dick Patterson, LHS Principal, who reported to defendants that, at the wrestling meet, Matt and plaintiff used inappropriate language and obscene hand gestures directed at the teachers, students, and himself, which included Matt mooning LHS students. Plaintiff claims that, at the meeting between Matt and defendant Burgat, defendant Burgat denied Matt's request to summon plaintiff.

Defendant Burgat signed the document that formalized Matt's suspension. The document stated that Matt would be considered a student in good standing when he returned to school following his suspension. Matt signed the document, which was then sent to plaintiff's wife.

On January 10, 2003, plaintiff filed another lawsuit against defendant Krawitz and others, alleging that Matt was suspended without due process, and further alleging assault, criminal and terroristic threats, invasion of privacy, and extreme and outrageous conduct. Plaintiff contends that, on the afternoon of January 10, 2003, he told Curtis Tideman, attorney for the School District, that he had in fact filed another lawsuit. That same day, in a letter dated January 10, 2003, defendant Krawitz sent a letter to plaintiff stating that Matt had been removed from the wrestling team for Matt's inappropriate behavior at the LHS wrestling match. Plaintiff alleges that defendant Krawitz sent the letter after Tideman and defendant Krawitz spoke about plaintiff's second lawsuit. Defendants deny this allegation.

Plaintiff further alleges that he met with Tideman on January 13, 2003, at which time plaintiff claims Tideman attempted to threaten plaintiff into dropping his lawsuits. That same day, Tideman authored a letter to plaintiff, notifying plaintiff that he was no longer allowed on School District property due to plaintiff's conduct at the LHS wrestling match.

## II. Motion to Dismiss Standard

The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir.1998), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher*, 144 F.3d at 1304, and all reasonable inferences from those facts are viewed in favor of the plaintiff, *Witt v. Roadway Express*, 136 F.3d 1424, 1428 (10th Cir. 1998). The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

## III. Discussion

Defendants move for dismissal, claiming that plaintiff fails to state a claim upon which relief may be granted and that the individual defendants are entitled to qualified immunity. Plaintiff moves the court to strike that portion of defendants' motion to dismiss which seeks dismissal on the grounds that plaintiff fails to state a claim. Plaintiff contends that defendants' motion on this basis is untimely. The court turns to the relevant procedural history of this case.

Pursuant to the court's Scheduling Order, all dispositive motions were due by January 30, 2004. Pursuant to that order, any motions to dismiss for failure to state a claim were to be filed by July 25, 2003. Plaintiff filed his Second Amended Complaint on July 22, 2003, which defendants moved to strike on the basis that plaintiff had not sought leave of court. The court, recognizing that plaintiff may have been confused by the Scheduling Order amendment provision, overruled defendants' motion to strike. By that time, the deadline to file motions to dismiss for failure to state a claim had passed.

Notwithstanding, defendants' motion to dismiss on the basis of qualified immunity is properly before the court. Plaintiff accordingly has responded to that part of defendants' motion to dismiss which asserts qualified immunity. As such, the court will consider whether the individual defendants are entitled to qualified immunity.

### A. Qualified Immunity

Under certain circumstances, the affirmative defense of qualified immunity shields public officials from individual liability in actions brought under 42 U.S.C. § 1983. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1185 (10th Cir.2001).

Once a defendant asserts a qualified immunity defense, the court employs a two-part test. Under the first of the two-part qualified immunity test, the court must determine whether the facts alleged by the plaintiff, taken in the light most favorable to him, show that the conduct of the individual defendants violated a constitutional right. *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). If the plaintiff fails to meet the threshold burden of demonstrating a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. If, on the other hand, the plaintiff's factual allegations amount to a violation of a constitutional right, "the next, sequential step is to ask whether the right was clearly established at the time of the [defendants'] unlawful conduct such that a reasonable person in the [defendants'] position would have known that the alleged conduct violated the federal right." *Id.*

With respect to plaintiff's federal constitutional claims, plaintiff alleges that defendants, "acting individually and in conspiracy with one another, suspended plaintiff's son Matthew from school and removed him from the wrestling team and banished plaintiff from defendant SMSD property and defamed the plaintiff and colored the plaintiff in a false light in the public eye in retaliation for plaintiff's threatening to exercise his constitutional right of equal access to the courts and in retaliation for plaintiff's exercising his constitutional right of equal access to the court." (Second Amended Complaint, ¶ 21).

As a preliminary matter, the court addresses plaintiff's allegations regarding

his son's suspension from school and removal from the wrestling team. Plaintiff's son, Matt, is not a named plaintiff in this lawsuit. As such, the court must keep firmly in mind the well-settled principle that a § 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else. *Dohaish v. Tooley,* 670 F.2d 934, 936 (10th Cir.1982) ("[T]he § 1983 civil rights action is a personal suit. It does not accrue to a relative, even the father of the deceased."). Thus, regardless of what happened to plaintiff's son, this case turns upon whether plaintiff personally suffered any deprivation of a constitutional right possessed by him individually. *Archuleta v. McShan,* 897 F.2d 495, 497 (10th Cir.1990).

■ Plaintiff also alleges that he was banished from school property. Plaintiff does not allege, nor could the court find authority supporting the notion, that plaintiff has a constitutional right to enter school property. To the contrary, school officials have the authority to control students and school personnel on school property, and also have the authority and responsibility for assuring that parents and third parties conduct themselves appropriately while on school property. *See, e.g., Carey v. Brown,* 447 U.S. 455, 470–71, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980) (stating that the Constitution does not leave state officials powerless to protect the public from threatening conduct that disturbs the tranquility of schools); *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (a school official's determination of the existence of an ongoing threat of disruption of the academic process can justify immediately removing a person from school property). Plaintiff has failed to allege that defendants' barring him from school property is a constitutional violation. *See Lovern v. Edwards,* 190 F.3d 648, 656 (4th Cir.1999) (holding that noncustodial parent's claims that public school superintendent's order barring him from

school property, on ground of parent's "continuing pattern of verbal abuse and threatening behavior towards school officials," violated parent's constitutional rights were "plainly insubstantial and entirely frivolous").

■ Finally, the court addresses plaintiff's allegation that he was defamed and colored in a false light. Plaintiff does not appear to assert that this conduct, in and of itself, was a constitutional violation. Moreover, plaintiff fails to identify any constitutionally protected liberty or property interest of which he was deprived as a result of this alleged conduct. As the Supreme Court repeatedly has stressed, § 1983 was not meant to federalize state tort law. *See, e.g., DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Accordingly, plaintiff's allegations of defamation and invasion of privacy do not constitute a constitutional violation.

The court is left to consider plaintiff's claim that defendants engaged in the aforementioned conduct in retaliation for plaintiff's exercise of his right to access the courts.

The First Amendment protects, along with other modes of expressive conduct, the right to petition the government for redress of grievances. The Supreme Court has interpreted the Petition Clause to apply in a variety of circumstances, noting the right to petition the representatives of the people in Congress, or to petition the executive branch, and the right of access to the courts. *Cal. Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) ("The right of access to the courts is but one aspect of the right of petition.").

■ First Amendment retaliation claims are generally, but not always, brought in the public employment context. *Connick*

*v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). In this case, plaintiff is not an employee of defendants, and no contractual relationship exists between the parties. The court therefore employs the substantive standard announced in *Worrell v. Henry*, 219 F.3d 1197 (10th Cir.2000). *See McCook v. Spriner Sch. Dist.*, 44 Fed. Appx. 896, 903 (10th Cir.2002). Accordingly, the court looks to whether plaintiff has alleged the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendants' actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendants' adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Worrell*, 219 F.3d at 1212.

█ Pursuant to this approach, the court first examines whether plaintiff was engaged in a constitutionally protected activity. There is no question that access to the courts is a constitutionally protected right. Yet, under the law of this circuit, simply claiming a denial of access to the courts is not, in and of itself, a constitutionally protected activity. Rather, the Petition Clause requires that one's petition must comment upon matters of public concern. *Martin v. City of Del City*, 179 F.3d 882, 887 (10th Cir.1999); *see generally Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

There appears to be two views regarding the imposition of limitations, if any, on the Petition Clause. The first view is that the petition right, including the right of access to courts, may be subjected to exactly the same limitations as would other First Amendment rights under similar circumstances, such as the requirement that the matter be of public concern. Kara Elizabeth Shea, *San Filippo v. Bongiovanni: The Public Concern Criteria and the Scope of the Modern Petition Right*, 48 Vand. L.Rev. 1697 (1995). Proponents of the second view contend that the petition right is fundamentally different from, and superior to, the other First Amendment rights and that, as a result, the right to petition confers the same status on all petitions, regardless of their content or the context in which they are presented. *Id.*

For example, in *San Filippo v. Bongiovanni*, 30 F.3d 424 (3rd Cir.1994), the plaintiff brought a § 1983 claim, alleging he had been retaliated against by his government employer for filing grievances and bringing a libel action in state court against university administrators. The Third Circuit held that the right to petition need not always require that the subject matter of the petition address a matter of public concern, reasoning: "[Plaintiff's] expressive conduct was not limited to speech. It included the filing both of lawsuits, and also a grievance under a collective bargaining agreement, against the [defendants], activities that implicate the petition clause, rather than the free speech clause, of the First Amendment." *Id.* at 434–35.

In *Martin v. City of Del City*, the Tenth Circuit considered and specifically rejected the Third Circuit's holding in *San Filippo*. The court stated:

We are, however, persuaded by Judge Becker's dissent in *San Filippo* to "adopt the position of the seven other circuits which hold that a public employee plaintiff who has 'petitioned' is in no better position than one who has merely exercised free speech." [*San Filippo*] at 449; see *San Filippo*, 30 F.3d at 440 n. 19 and cases there cited. And, we note, that such other First Amendment claims must meet the "public concern" test.

*Martin,* 179 F.3d at 889. In *Martin,* the court also cited to a previous Tenth Circuit opinion, *Schalk v. Gallemore,* 906 F.2d 491, 494, 497–98 (10th Cir.1990), wherein the court held: "[Plaintiff's] right to petition is inseparable from her right to speak. As such, we see no reason to subject this claim to a different sort of analysis." *Martin,* 179 F.3d at 888 (citing *Schalk,* 906 F.2d at 499 (citation omitted)). Accordingly, the *Schalk* court held that the public concern test applied to plaintiff's claim under the Petition Clause.

The court recognizes that the plaintiff's claims in *Martin* were brought in the public employment context. Yet, it appears the public concern requirement is applicable even outside the public employment context. In *McCook v. Spriner School District,* the parents of an expelled high school student, who were barred from entering school property, alleged that the school district and several of its employees retaliated against them for exercising their First Amendment rights. 44 Fed. Appx. 896 (10th Cir.2002) (unpublished). The plaintiffs contended that this First Amendment retaliation was in response to their complaints, lawsuits, and other objections regarding the school district. Specifically, the plaintiffs' criticisms included allegations about the incompetent administration of the school district; loss of students from the district and improper disciplinary practices; violations of State Board of Education policies, the Open Meetings Act, and the district's own policies; unconstitutional use of drug-sniffing dogs on campus; and the school board's wrongful restriction of public input at board meetings. Additionally, in June 1998, the plaintiffs filed a lawsuit against a board member because the son of the board's president was selected as a scholarship recipient instead of the plaintiffs' son. Several days before plaintiffs' son's suspension, the plaintiffs also filed a complaint of reverse racial discrimination against the board, contending that the board hired a much less qualified Hispanic individual for a teacher position.

The plaintiffs in *McCook* argued that, where no employment or contractual relationship exists between the parties, there is no requirement that protected speech involve matters of public concern. In considering the plaintiffs' argument, the court cited to *Dishnow v. Sch. Dist. of Rib Lake,* 77 F.3d 194, 197 (7th Cir.1996), which held that the rights of public employees to exercise free speech is limited to speech on matters of public concern. The *McCook* court stated, "While this conclusion was reached in reviewing the law governing public employee free speech claims, we think the Seventh Circuit's view of 'public concern' is compelling on the facts of this case." *McCook,* 44 Fed. Appx. at 904.

■ Even more instructive in *McCook* is the very next paragraph, wherein the court stated that "some of the [plaintiffs'] activities were not protected by the First Amendment, *for example, filing a lawsuit to vindicate private rights (not a matter of public concern)." Id.* (citing *Rice v. Ohio Dep't of Transp.,* 887 F.2d 716, 720–21 (6th Cir.1989), *vacated on other grounds,* 497 U.S. 1001, 110 S.Ct. 3232, 111 L.Ed.2d 744 (1990)). Thus, even outside the public employment context, the Tenth Circuit requires that, in order for speech to be protected, it must touch upon a matter of public concern. Moreover, the filing of a lawsuit to vindicate private rights is not a matter of public concern.

■ In the case at hand, plaintiff's sole basis for his retaliation claim is that he filed other lawsuits against defendants. Those lawsuits, which included claims for negligence, defamation, invasion of privacy, intentional infliction of emotional distress, assault, criminal and terroristic threats, and extreme and outrageous conduct, and this lawsuit, which alleges a civil rights claim under § 1983, merely seek

redress for plaintiff's private rights. In other words, plaintiff is not advancing a cause or claiming that there is a bigger pattern of official misconduct. Rather, the substance of those lawsuits are aimed at achieving only redress for plaintiff's private grievances. *See, e.g., McCormick v. City of Lawrence,* 253 F.Supp.2d 1156, 1170 n. 8 (D.Kan.2003) (finding plaintiff's § 1983 claim not a matter of public concern).

Therefore, pursuant to the law of this circuit, the court concludes that plaintiff was not engaged in a constitutionally protected activity. As such, there can be no constitutional violation, and defendants Krawitz and Burgat are therefore entitled to qualified immunity.[1]

The only remaining defendant is the School District. For plaintiff to establish liability against the School District, as a quasi-municipal agency, he "must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged." *Hinton v. City of Elwood,* 997 F.2d 774, 782 (10th Cir.1993).

■ The School District is not entitled to assert the defense of qualified immunity. *Owen v. City of Independence,* 445 U.S. 622, 650–53, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (government entities may not assert qualified immunity). However, in the course of considering whether the individual defendants are entitled to qualified immunity, the court has found no constitutional violation. The Tenth Circuit has held that, where a court determines that the individual defendants committed no constitutional violation, municipal liability may not be imposed. *Butler v. City of Prairie Vill.,* 172 F.3d 736, 747 (10th Cir. 1999) ("Because our conclusion that the individual defendants are entitled to quali-

fied immunity rests on the determination that none of them violated Plaintiff's constitutional rights, the City may not be found to have violated his rights."). *See also Wilson v. Meeks,* 98 F.3d 1247, 1255 (10th Cir.1996) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers."). Accordingly, plaintiff's claims against the School District cannot stand.

**B. Remaining Motions**

The court concludes that the allegations contained in plaintiff's Second Amended Complaint do not amount to a constitutional violation of plaintiff's rights. In reaching this conclusion, the court excludes from consideration that portion of defendants' motion to dismiss which seeks dismissal on the grounds that plaintiff fails to state a claim. As such, the court denies as moot plaintiff's Motion to Strike Portions of Defendants' Amended Motion to Dismiss. Plaintiff also moved for a continuance, requesting that he be allowed to file his response to that portion of defendants' motion to dismiss for failure to state a claim until after the court rules on plaintiff's motion to strike. As such, plaintiff's Motion for Continuance also is denied as moot. Plaintiff alternatively requested an order granting leave to amend his Second Amended Complaint, but failed to attach a copy of his proposed amended complaint. Because plaintiff failed to set forth in his motion the substance of the proposed amendment, the court denies plaintiff's request. Finally, the court denies as moot both parties' Motions to Review and Objections to Magistrate Judge's Order.

**C. Remaining State Law Claims**

The preceding analysis effectively disposes of all of plaintiff's claims arising

---

1. At the very least, the law was not clearly established that plaintiff's conduct was constitutionally protected, thus entitling defendants

Krawitz and Burgat to qualified immunity on this basis as well.

under federal law. Thus, the bases for federal subject matter jurisdiction have been extinguished. Under these circumstances, the district court may decline to exercise continuing "pendent" or supplemental jurisdiction over plaintiff's state claims. 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("[I]f the federal claims are dismissed before trial, ... the state claims should be dismissed as well."). The court therefore dismisses without prejudice plaintiff's state law claims.

**IT IS THEREFORE ORDERED** that Defendants Shawnee Mission Unified School District # 512, Karl Krawitz and Keith Burgat's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 98) and Defendants Shawnee Mission Unified School District # 512, Karl Krawitz and Keith Burgat's Amended Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 100) are granted. Plaintiff's Motion for Continuance (Doc. 103); Plaintiff's Motion to Strike Portions of Defendants' Amended Motion to Dismiss or in the Alternative Plaintiff's Motion to Amend Complaint (Doc. 104); defendants' Motion to Review and Objections to Magistrate Judge's Order (Doc. 124); and plaintiffs' Motion to Review and Objections to Magistrate Judge's Order (Doc. 136) are denied. This case is hereby dismissed.