**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 13 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BRENDA LANDER,

      Plaintiff-Appellant,

v.

SUMMIT COUNTY SCHOOL
DISTRICT, JANIS BUNCHMAN, and
WES SMITH,

      Defendants-Appellees.

No. 02-1160
(D. Colorado)
(D.Ct. No. 01-M-2161)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, Circuit Judge, **HOLLOWAY**, and **McWILLIAMS**, Senior
Circuit Judges.


This case is an appeal from a dismissal under Fed. R. Civ. P. 12(b)(6) in a §

1983 suit alleging violation of First Amendment Rights. Plaintiff, Brenda Lander,

sued the Summit County Colorado School District and Frisco Elementary

Principal Janis Bunchman, and Superintendent Wes Smith in their individual

capacities, alleging her employment contract was not renewed and she received

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

false and derogatory employment references in violation of her First Amendment right to speak on matters of public concern. The district court dismissed her First Amendment claim concluding her statements did not involve matters of public concern, and it declined to exercise supplemental jurisdiction over the state law claims. Lander thinks the district court erred in dismissing her complaint and, alternatively, argues it should have allowed her to amend.

For the reasons detailed below, we find the district court erred in concluding Lander's statements did not pertain to a matter of public concern. Accordingly, we REVERSE the grant of summary judgment for the defendants.

# I

*Background*

Plaintiff Brenda Lander (Lander) was employed as a Library Media Specialist at Frisco Elementary School, where she taught computer and technology classes, and managed technological support and the media program. Appellant App. at 7,8. Her duties included purchasing and monitoring technological support and technology supplies for the entire school, as well as coordinating and evaluating media programs. *Id.* at 8.

In the Spring of 2000, Frisco Elementary Principal Janis Bunchman

(Bunchman) imposed a requirement that all media specialists would have to teach classes through the last day of school. *Id.* In response, and on behalf of the media specialists, Lander complained to the administration and the education association "that this requirement made it impossible for these teachers to complete their job duties without working unpaid overtime and that the requirement was detrimental to the maintenance of school equipment and the efficient functioning of the school libraries." *Id.* According to Lander, her statements angered Bunchman, who altered Lander's teaching schedule for the 2000-2001 school year. Specifically, Lander alleged Bunchman required her to teach "back-to-back half hour classes on Fridays with no breaks or passing periods between student groups." *Id.* In reply, Lander complained to Bunchman "that half hour lessons were inadequate and would deprive students of a quality education, but Bunchman refused to amend the schedule." *Id.*

At the beginning of the 2000-2001 school year, Lander reviewed Frisco Elementary's technology budget

> for which she was responsible, and noticed that approximately 22% of that budget had been spent over the summer without her knowledge and in contravention of the consensus of the staff, on out-of-date program contracts previously vetoed by the staff, duplicative contracts for software support already available at the school, and a software upgrade that was not operational on any student computers.

*Id*. at 9. When she inquired, Lander learned that Bunchman had authorized the purchase by "a new reading teacher at the school, who was also the wife of a

sitting school board member." *Id.* Lander complained to Bunchman "that the expenditures were a waste of school resources, in derogation of the decision made by the faculty, and an indefensible expenditure." *Id.*

Near the close of the 2000-2001 school year, Bunchman informed Lander she would not recommend the renewal of Lander's teaching contract for the 2001-2002 school year. *Id.* at 12. Lander claims the decision was based on a false evaluation stemming from a number of things, including her comments on the technology budget, half-hour technology lessons, and the requirement that media specialists teach on the last day of school. *Id.* Superintendent Wes Smith informed Lander that based solely upon Bunchman's recommendation, he would recommend to the school board that her contract not be renewed. *Id.* After her contract was not renewed, Lander then interviewed for and was offered two separate positions in another district. But, according to her complaint, these offers were revoked after Bunchman and Smith provided false and negative references. *Id.* at 14.

In addressing the School District's motion to dismiss under Rule 12(b)(6), the district court noted that the subject of education in general is likely a matter of public concern, but also recognized the need to look beyond the general subject matter to the actual statements to see if they were, in fact, focused on matters of public concern. It concluded they were not and dismissed the complaint.

Supplemental jurisdiction over her state law claims was declined and the claims were dismissed without prejudice.[1]  Finally, the district court refused her very generalized motion to amend.

## II

*Discussion*

## A

*First Amendment Claims*

We review de novo the district court's decision to dismiss Lander's complaint under Rule 12(b)(6).  *Ordinance 59 Ass'n v. U.S. Dep't of Interior Secretary*, 163 F.3d 1150, 1152 (10th Cir. 1998).  We consider the complaint as a whole, accept all well-pled factual allegations as true, and view those allegations, and reasonable inferences therefrom, in a light most favorable to the non-moving party.  *Sutton*, 173 F.3d at 1236; *Dill v. City of Edmond*, 155 F.3d 1193, 1201 (10th Cir. 1998).  Dismissal under "[a] 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in

---

[1]The court reaffirmed its holdings with a one-page written order incorporating its oral findings and dismissing Lander's complaint pursuant to 12(b)(6) & 12(b)(1).

support of [her] claim which would entitle [her] to relief." *Sutton*, 173 F.3d at 1236 (citations and quotations omitted). Yet, we need not accept a party's conclusory allegations as true. *Southern Disposal, Inc. v. Texas Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998). Nor may a party "overcome pleading deficiencies with arguments that extend beyond the allegations contained in the complaint." *Bauchman for Bauchman v. West High School*, 132 F.3d 542, 550 (10th Cir. 1997), *cert. denied*, 524 U.S. 953 (1998). "Whether speech involves a matter of public concern is a question of law to be determined de novo." *Edwards v. City of Goldsboro*, 178 F.3d 231, 246 (4th Cir.1999) (citation omitted).

"[A] public employer cannot retaliate against an employee for exercising [her] constitutionally protected right of free speech." *Dill*, 155 F.3d at 1201 (citing *Connick v. Myers*, 461 U.S. 138, 146-47 (1983)). To determine "whether a public employer's actions impermissibly infringe on free speech rights, we apply the four-prong test articulated in *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968)." *Burns v. Board of County Comm'rs of Jackson County*, 330 F.3d 1275, 1285-86 (10th Cir. 2003) (footnote omitted).

> First, we must determine whether the employee's speech involves a matter of public concern. If so, we then balance the employee's interest in commenting upon matters of public concern against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. Third, if the balance tips in favor of the employee, the employee then must show

- 6 -

that the speech was a substantial factor or a motivating factor in the detrimental employment decision. Fourth, if the plaintiff establishes that speech was such a factor, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech.

*Finn v. New Mexico*, 249 F.3d 1241, 1247 (10th Cir. 2001) (internal citations and quotations omitted). Here, the sole issue before us is whether, as alleged in her complaint, Lander's speech involved a matter of public concern and thereby satisfied the initial threshold determination of this four-pronged approach. *Id.* at 1247. If her "speech cannot be fairly characterized as constituting speech on a matter of public concern, it is unnecessary . . . to scrutinize the reasons for her discharge [non-renewal]." *Saye v. St. Vrain Valley School Dist. RE-1J*, 785 F.2d 862, 866 (10th Cir. 1986) (quoting *Connick*, 461 U.S. at 146).

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48. In determining whether her speech touched on matters of public concern, we look to "whether the public or the community is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as essentially a private matter between employer and employee." *Edwards v. City of Goldsboro*, 178 F.3d 231, 247 (4th Cir.1999) (quoting *Berger v. Battaglia*, 779 F.2d 992, 999 (4th Cir.1985) (internal quotation marks omitted)).

To qualify as a matter of public concern, the speech in question must do more than merely fall within a topic that is of general interest to the public; rather the specific articulation must touch on a matter of public concern. *See Burns*, 330 F.3d at 1286; *Moore v. City of Wynnewood*, 57 F.3d 924, 932 (10th Cir 1995). Yet, "the choice to speak through a private forum, rather than a public one, does not remove the speech from First Amendment protection." *Lee v. Nicholl*, 197 F.3d 1291, 1295 (10th Cir. 1999) (citations omitted).

In this case, Lander alleges she spoke on two areas of public concern: the waste of the school's technology budget and the reduction of classroom time. We agree because the first subject relates to malfeasance on the part of a public official and the second relates to the quality of public education.

## 1

### *Public malfeasance*

The first subject Lander claims was a matter of public concern was her criticism of how the school's technology budget was spent. In her complaint, Lander states:

> approximately 22% of [the school's technology] budget had been spent over the summer without Plaintiff's knowledge and in contravention of the consensus of the staff, on out-of-date program contracts previously

vetoed by the staff, duplicative contracts for software support already available at the school, and a software upgrade that was not operational on any student computers.

Appellant's App. at 9. Lander goes on to provide context for the alleged mis-allocation of school funds:

> Defendant Bunchman revealed to Plaintiff that she had given those monies to a new reading teacher at the school, who was also the wife of a sitting school board member, and that Defendant Bunchman had allowed the board member's wife to purchase the materials over the summer.

*Id.* In other words, Lander's complaint was not that the school should have spent money on software X instead of software Y because software X is better. Rather, the crux of Lander's complaint was that Bunchman allowed public funds to be wasted in order to curry favor with her superior. In other words, Lander was not complaining of an internal budgetary decision but rather of malfeasance by a public official.

It is well established that "Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials, in terms of content, clearly concerns matters of public import." *Conway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988). As noted above, Lander's complaints about the mis-allocation of school funds regard an allegation of malfeasance by Bunchman by using school funds to advance her own career. Therefore, Lander's speech on

this subject is on a matter of public concern.

That Lander was complaining of malfeasance by Bunchman rather than a simple mis-allocation of school funds distinguishes the instant case from that in *Gardetto v. Mason*, 100 F.3d 803 (10th Cir. 1996). There, we did hold that "details of internal budgetary allocations at an institution of public education are not matters of public concern." *Id.* at 814. We applied that classification, however, only to complaints about how the plaintiff and her staff would be affected by a reduction in force plan, reasoning that the primary motivation for the complaint was the plaintiff's "personal interest in maintaining her staff." *Id.* Importantly, there was never an allegation in that case that a public official was attempting to use public funds to curry favor, nor an allegation that a public official was wasting money, as the instant averments state here. *See also Schalk v. Gallemore*, 906 F.2d 491, 496 (10th Cir. 1990) (holding that a hospital employee's letter is on a matter of public interest when it "implicates the fiscal policies of the defendant and attempts to disclose waste and wrongdoing").

Moreover, that the specific malfeasance by Bunchman may have been isolated does not remove Lander's comment from the ambit of public concern. As we made clear in *Conway*, "[s]peech which discloses *any* evidence of . . . malfeasance on the part of city officials . . . clearly concerns matters of public import." *Id.* (emphasis added). Accordingly, we held, for example, in *Burns v.*

*Bd. of County Comm'rs*, 330 F.3d 1275, 1286 (10th Cir. 2003), that a plaintiff's statements relating to a single trade of "a Ford pickup for a Chevy pickup" was a matter of public concern because the plaintiff had reason to believe the trade was evidence of impropriety on the part of public officials. And, while the First Amendment claim did not prevail in *Connick*, nevertheless there in the Court's conclusion it was emphasized that the holding was "grounded in our *longstanding recognition that the First Amendment's primary aim is the full protection of speech upon issues of public concern*, as well as the practical realities involved in the administration of a government office." 461 U.S. at 154 (emphasis added).

**2**

*Quality of public education*

The second subject Lander claims was a matter of public concern was the requirement by Bunchman that all media specialists teach through the last day of class. In her complaint, Lander states:

> 13.     In late spring 2000, Defendant Bunchman made an unprecedented requirement that all media specialists teach through the last day of school. On behalf of the media specialists, Plaintiff complained to the administration and SCEA that this requirement *made it impossible for these teachers to complete their job duties without working unpaid overtime and that the requirement was detrimental to the maintenance of*

> *school equipment and the efficient functioning of the school libraries.*

Appellant's App. at 8 (emphasis added).  As such, Lander is not complaining of the effect of the terms of her employment on her but rather the effect upon her students.  Thus, Lander's complaint pertains to the quality of public education rather than an internal management decision.

"Teachers whose speech directly affects the public's perception of the quality of education in a given academic system find their speech protected [under the First Amendment]." *Maples v. Martin*, 858 F.2d 1546, 1553 (11th Cir. 1988); *Hulen v. Yates*, 322 F.3d 1229, 1238 (10th Cir. 2003) (citing *Maples* for the cited quote).  Here, as noted above, Lander's complaint is that the policy imposed by Bunchman adversely affects the quality of education provided by the Frisco Elementary School in preventing necessary maintenance on equipment.  Therefore, Lander's speech on this subject was on a matter of public concern.  *See Gardetto*, 100 F.3d at 813 (noting that complaints about decisions that "affect the basic functions and missions" of a public educational institution do constitute "speech on matters of public concern").

Moreover, that the general public may show apathy toward this issue is of no import in determining whether this issue is of public concern.  As Judge Posner forcefully stated, the protections of the First Amendment are not limited to "matters of transcendent importance, such as the origins of the universe or the

- 12 -

merits of constitutional monarchy" but encompass all "matters in which the public might be interested." *Dishnow v. Sch. Dist. of Riblake*, 77 F.3d 194, 197 (7th Cir. 1996). "That the public was not large, that the issues were not of global significance, and . . . not . . . vital to the survival of Western civilization [does] not place [] speech outside the orbit of [First Amendment] protection." *Id.*

This is not to say, however, that the relative importance of the speech is irrelevant. Rather, the importance of the speech is properly considered in the second step of the analysis utilized to assess a First Amendment claim "wherein the employee's interest in free comment upon matters of public concern is weighed against the state's interest in the efficiency of its public services." *Pickering v. Board of Educ. of Township High School Dist. 205, Will County, Ill.*, 391 U.S. 563, 568 (1968). Such a balancing test, however, is inappropriate in evaluating a dismissal under Fed. R. Civ. P. 12(b)(6) as no countervailing state interest could have been alleged since the claim is evaluated solely upon the pleadings of the plaintiff. Therefore, the relative importance of Lander's speech is irrelevant to this appeal.

**B**

*Motion to Amend*


As an alternative argument, Lander argues that we should allow her to amend her complaint were we to find the district court's dismissal was not in error. As concluded above, we find the district court did err in dismissing Lander's claim and, therefore, need not address her request to amend her complaint.


**III**

*Conclusion*


For the reasons detailed above, we hold that Lander's speech did encompass two points of public concern: malfeasance of a public official and harm to the quality of public education. Accordingly, we REVERSE the district court's dismissal of Lander's claim pursuant to Fed. R. Civ. P. 12(b)(6).


Entered for the Court


William J. Holloway, Jr.
Circuit Judge


- 14 -

02-1160 *Lander v. Summit Co. School Dist.*
**O'BRIEN**, dissenting.

As to all of Lander's claims, perspective is critical. Infinite is the universe of issues that could, and perhaps do, affect education. Within that universe is a subset of factors, almost infinite, that may impact the performance of teachers, staff and administrators. But not every factor does, or should, engage the attention of the public. Looming personal issues are not of equal dimension to a distant observer. Often they are regarded by the wider audience as simply banal; lost in the flood of daily decisions necessary to school administration. To the discerning eye, Lander may even be correct, and Bunchman wrong, on the merits of any one or all of these issues, but even being right does not elevate this debate from the principal's office to the boardroom, the pulpit or the commons.

We can push 12(b)(6) inferences to their outer limits, but doing so does not inform the debate. Lander's quarrels with the school administration are "more properly viewed as essentially a private matter between employer and employee." *Edwards v. City of Goldsboro*, 178 F.3d 231, 247 (4th Cir.1999) (quotation and citation omitted). So, I dissent.

### 1. *Technology Budget*

Lander contends her statements regarding the waste of technology resources touched on a matter of public concern—harmful and wasteful spending of technology resources. The majority characterizes her claim as a comment on malfeasance. However, we do not look solely to the content of the statement, but

"focus[] on the motive of the speaker in analyzing whether the speech qualifies as a matter of public concern, *i.e.,* whether the speech *was calculated* to disclose misconduct or dealt with only personal disputes and grievances with no relevance to the public interests. *Conaway v. Smith,* 853 F.2d 789, 796 (10th Cir. 1988); *see also Callaway v. Hafeman,* 832 F.2d 414, 417 (7th Cir. 1987) ("while the content of [plaintiff's] communications touched upon an issue of public concern generally . . . such speech stands unprotected from employer scrutiny when uttered in the pursuit of purely private interests"); *Terrell v. Univ. of Texas Sys. Police,* 792 F.2d 1360, 1362 (5th Cir. 1986) ("the mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment"); *Linhart v. Glatfelter,* 771 F.2d 1004, 1010 (7th Cir. 1985) (citing *Connick v. Meyers*, 461 U.S. 138 (1983) (the *Connick* test "requires us to look at the *point* of the speech in question: was it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?"). As a result, while speech concerning the use of public funds generally touches upon a matter of public concern, "criticisms of internal management decisions [and] . . . the details of internal budgetary allocations at an institution of public education are not matters of public concern." *Gardetto v. Mason*, 100 F.3d 803, 813-14 (10th Cir. 1996) (quotations and citations omitted).

Allowing all reasonable inferences, the content, context, and form of Lander's speech reveals it to address only a narrow internal management decision which affected her personally. Specifically, she challenged internal budgetary allocations made without her blessing and contrary to the wishes of some of the affected faculty. The majority attaches much importance to Bunchman's possible motivation in allowing the spouse of a school board member to expend the funds. But it was Bunchman, not Lander, who brought this fact to light—and Lander's Complaint makes no reference to malfeasance.

More important, Lander does not demonstrate, or even allege, the actual amount of supposedly squandered funds, the amount of the technology budget, or the relationship the technology budget bears to the budget of the school or district. Significantly, she does not claim systemic or even widespread waste, merely one isolated incident of intense concern to her and perhaps a few others who felt their ox was being gored. Criticism of internal budgetary decisions, which are not even alleged to have substantially or detrimentally affected the overall school budget or the welfare of the children, is micro, not macro, economics. Litigating minutia is probably more debilitating to the school than the supposed wrongs which motivated the litigation.

The roles of the parties also impact the analysis. Lander was an employee with specific responsibilities and input regarding technology, a role which

distinguishes her from a concerned citizen. *See also Craven v. Univ. of Colo. Hosp. Auth.*, 260 F.3d 1218, 1226-27 (10th Cir. 2001) (citing *Connick*, 461 U.S. at 147) (speech was not a matter of public concern as "Plaintiff was obviously speaking as an employee--not as a citizen."). Not "all matters which transpire within a government office are of public concern . . . such a presumption would mean that virtually every remark . . . would plant the seed of a constitutional case." *Id.* (citation and quotations omitted). Consequently, the purpose of Lander's complaint regarding the technology budget was not to discuss a matter of public concern, but to challenge the principal on matters of internal budgeting that circumvented Lander. An employee's speech can form the basis of a civil rights suit only "when the employee spoke '*as a citizen* upon matters of public concern' rather than '*as an employee* upon matters only of personal interest.'" *United States v. Nat'l Treasury Employees Union,* 513 U.S. 454, 466, (1995), quoting *Connick*, 461 U.S. at 147.

### 2.    *Reduction of Classroom Time*

Lander was unhappy about Bunchman's requirement that she teach back-to-back half-hour classes on Fridays, with no breaks or passing periods between student groups. She complained "that half hour lessons were inadequate and would deprive students of a quality education . . . ." (Appellant's App. at. 8.) Lander maintains this statement touched on a matter of public concern, as it

raised issues regarding the proper instruction and/or learning of the children in a public school.

Because of the public's general and abiding interest in education, the notion that this statement has such impact offers superficial appeal. However, as stated earlier, we must look beyond the general topic of public education to review Lander's actual statements. *Moore v. City of Wynnewood*, 57 F.3d 924, 932 (10th Cir 1995). Much like our determination in *Saye v. St. Vrain School Dist. RE-1*, the length of a technology class is not a matter likely to capture the imagination of general public. 785 F.2d 862, 866 (10th Cir. 1986) (allocation of aide time among teachers does not give rise to public concern). Lander's statement was that of an employee voicing a personal grievance with her employer—her work schedule. That is not the public's concern. *See Edwards*, 178 F.3d at 247. Moreover, the coincidence of the "children's needs" and Lander's convenience is notable.

### 3.    *Working the Last Day of Class*

In response to Bunchman's requirement that all media specialists teach classes through the last day of school, Lander complained to the administration and education association on behalf of the media specialists, "that this requirement made it impossible for these teachers to complete their job duties without working unpaid overtime and that the requirement was detrimental to the

maintenance of school equipment and the efficient functioning of the school libraries." (Appellant's App. at 8.) She asserts this statement also touched on a matter of public concern as it addressed inefficiency, waste of resources, and employee performance.

Looking at the context, form, and content of Lander's statement, it clearly involved a grievance about the terms and conditions of employment. Allegations of an internal personnel issue involving a few employees and a narrow issue is simply not a matter of public concern. *See also Finn v. New Mexico*, 249 F.3d 1241, 1247 (10th Cir. 2001) (distinguishing between statements of public concern and those of personal concern). The fact that her statement was made on behalf of other media specialists helps her not a whit. To the contrary, it supports the view that this was an internal personnel matter, and a minor one. While it may have been of legitimate, perhaps intense, concern to the media specialists, it was personal to them, internal to the school and of limited reach. To hold otherwise is to allow any public employee's grievance with his/her workload or schedule to rise to a matter of public concern, as long as the pleadings alleged a resulting inefficiency or detriment to the public services involved.

I would affirm the decision of the district court.