# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued February 15, 2008                 Decided April 4, 2008

No. 07-7072

CHRISTOPHER GRIFFITH ET AL.,
APPELLANTS

v.

CATHY L. LANIER,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 06cv01223)

---

*Matthew A. LeFande* argued the cause and filed the briefs for appellants.

*Holly M. Johnson*, Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellee. With her on the brief were *Linda J. Singer*, Attorney General, *Todd S. Kim*, Solicitor General, and *Edward E. Schwab*, Deputy Attorney General.

Before: HENDERSON and ROGERS, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: Christopher Griffith and Daniel K. Kim are members of the District of Columbia's Metropolitan Police Department Reserve Corps, a corps of unpaid volunteers who assist full-time officers of the Metropolitan Police Department ("MPD") in the provision of law enforcement services. See D.C. Code § 5-129.51 (Supp. 2007). Griffith and Kim brought suit in the district court to enjoin the enforcement of the MPD's General Order 101.03, issued in 2006 by then-Chief of Police Charles Ramsey, which brought the Reserve Corps into conformity with certain regulations issued under the Volunteer Services Act ("VSA") of 1977, D.C. Code § 1-319.02 (2001). See D.C. Mun. Regs. tit. 6, § 4000.1-.26. Among other claims, the plaintiffs challenged the General Order's limitation of their "right to organize for collective bargaining purposes" as a facial violation of the First Amendment. They also protested the order's provision for at-will dismissal as depriving them, without due process, of a statutorily-conferred property interest in continued volunteer service.

Ramsey filed a motion to dismiss on all counts. The district court granted this motion after Ramsey had left office, substituting as defendant the new police chief, Cathy L. Lanier. *Griffith v. Lanier*, No. 06-01223, slip op. at 1 & n.1 (D.D.C. Mar. 28, 2007). The plaintiffs now appeal the substitution of Lanier as well as the dismissal of their First Amendment and due process claims. For the reasons discussed below, we affirm the judgment of the district court. (We need not address the plaintiffs' request for class-action certification.)

3

\* \* \*

First, a word on the parties. The complaint names Ramsey as the sole defendant, "acting in his official capacity as the MPD Chief of Police." Compl. 2. Such language "is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Hafer v. Melo*, 502 U.S. 21, 26 (1991). Moreover, the plaintiffs seek injunctive relief as well as money damages, Compl. 11-12; the former is obviously available only from a currently serving official defendant. Thus, the district court correctly construed the complaint as naming Ramsey in his official capacity. It follows that Lanier's taking office triggered application of Fed. R. Civ. P. 25(d), which "automatically" substitutes the successor of a public officer named in his "official capacity." Accord Fed. R. App. P. 43(c)(2).

In a motion for reconsideration, the plaintiffs asked the district court to withdraw the substitution and to add Lanier as a separate official defendant, apparently wishing to proceed against Ramsey in his personal capacity (presumably for money damages only). The court denied the motion without comment. On appeal, the plaintiffs repeat their objections to the substitution, but do not explicitly request that Lanier be added as a separate defendant. See Griffith Br. 53 (stating that the plaintiffs "presently offer no allegation of misconduct" against Lanier). Since the district court's reading of the complaint was correct and the plaintiffs' wishes concerning Lanier are unclear, we affirm the district court on this issue. We note that in the end nothing actually turns on the question (for we affirm the judgment in full on the merits), and also that, had the plaintiffs sought leave to amend their complaint to name Ramsey in his personal capacity, such leave would have been freely given if "justice so require[d]." Fed. R. Civ. P. 15(a)(2).

4

\* \* \*

The plaintiffs' First Amendment claim concerns a declaration in the General Order that Reserve Corps members, as volunteers, "shall not be eligible for any benefits normally accruing to employees of the District of Columbia, including health insurance, retirement, life insurance, leave, or *the right to organize for collective bargaining purposes*, unless such benefits are specifically provided by the laws of the District of Columbia." MPD General Order 101.03 § IV.C.5 (emphasis added). The plaintiffs read this provision as a prior restraint of their First Amendment freedoms to speak and associate on matters related to collective bargaining.

The plaintiffs clearly have *standing* to raise their facial challenge, as the General Order would, on their reading, tend to discourage their expression of opinions on collective bargaining. Moreover, we assume *arguendo* that they have a sufficient interest in their volunteer positions to be protected against speech-related dismissal under such cases as *Pickering v. Board of Education*, 391 U.S. 563 (1968), as did the district court.

But while the plaintiffs' reading of the General Order may be a possible one, it is not the most likely reading. Even "[a] limiting construction that is 'fairly' possible can save a regulation from facial invalidation," *Initiative & Referendum Inst. v. U.S. Postal Serv.*, 417 F.3d 1299, 1316 (D.C. Cir. 2005) (quoting *Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 575 (1987)), and here the more plausible reading is completely innocent of First Amendment difficulties. Few would consider free speech as a "benefit" along the lines of health insurance or retirement pay. In this context, the restricted "right to organize for collective bargaining purposes" is more naturally understood as the right to *engage in collective bargaining*—i.e., the right to *force* the District to

negotiate with representatives of a collective bargaining unit composed of reserve officers. "[I]n the context of federal sector labor-relations, collective bargaining is a term of art with a well-established statutory meaning," *Nat'l Treas. Employees Union v. Chertoff*, 452 F.3d 839, 857 (D.C. Cir. 2006), one that imposes an "obligation" on an employer to negotiate with "the exclusive representative of [its] employees," *id.* (quoting 5 U.S.C. § 7103(a)(12)). Indeed, defendant Lanier's brief offers just this meaning, identifying the negated benefit as the right "normally accruing" to District employees to "engage in collective bargaining concerning terms and conditions of employment" under the Comprehensive Merit Personnel Act, D.C. Code § 1-617.01(b)(2) (Supp. 2006). See Lanier Br. 10-11.

This narrower reading of the General Order leaves the plaintiffs' First Amendment rights intact (as they themselves concede, see Griffith Br. 26), for while "the Constitution guarantees workers the right individually or collectively to voice their views to their employers, . . . [it] does not afford such employees the right to compel employers to engage in a dialogue or even to listen." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 313 (1979) (citations omitted). Thus the clause survives the plaintiffs' facial challenge.

\* \* \*

The plaintiffs also bring a due process claim concerning their tenure in office. The General Order declares that Reserve Corps members "serve at the pleasure of the Chief of Police" and may be removed at will without any administrative review. MPD General Order 101.03 § IV.J. The plaintiffs contend that D.C. law prohibits their dismissal except for cause, and thereby establishes a property interest in continued volunteer service; the General Order, they say,

threatens to deprive them of this interest unconstitutionally. Cf. *Bd. of Regents v. Roth*, 408 U.S. 564, 576-77 (1972).

The plaintiffs correctly recognize that the success of their due process claim requires local legal protection of their interests in continued service. To "have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it"; he must have "a legitimate claim of entitlement to it," created "by existing rules or understandings that stem from an independent source such as state law." *Id.* at 577. Whether such local law protection is a *sufficient* condition for a "property interest" is a matter we need not reach; there is some authority that the continued service of an unpaid volunteer—even if guaranteed by statute—cannot qualify as a property interest under the Due Process Clause. Compare *Versarge v. Twp. of Clinton*, 984 F.2d 1359, 1370 (3d Cir. 1993) (finding no property interest in volunteer service absent some further form of compensation), with *Thornton v. Barnes*, 890 F.2d 1380, 1388 & nn.11-12 (7th Cir. 1989) (suggesting that such an interest may exist in the volunteer position itself). But because the plaintiffs' interests are unprotected by D.C. law, the Due Process Clause offers them no help.

We construe D.C. law as it has been interpreted by the D.C. Court of Appeals, see *Poole v. Kelly*, 954 F.2d 760, 761 (D.C. Cir. 1992)—or, in the absence of such guidance, as we predict that court would interpret it, see, e.g., *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 824 & n.13 (D.C. Cir. 1984). The D.C. Court of Appeals has twice held (albeit in unpublished decisions) that Reserve Corps members are "unpaid volunteers" under D.C. Code § 5-129.51, and are therefore subject to the VSA, § 1-319.02 (governing "the use of volunteers by agencies . . . of the District of Columbia"), as well as the regulations promulgated thereunder, D.C. Mun. Regs. tit. 6, § 4000.1-.26. See *Johnson*

*v. Williams*, No. 04-CV-441, slip op. at 1-2 (D.C. Nov. 30, 2005); *LeFande v. District of Columbia*, No. 04-CV-68, slip op. at 3 (D.C. May 25, 2005). These regulations state that "[t]he acceptance and utilization of the services of any person on a voluntary basis shall be at the discretion of each agency, and . . . may be discontinued by the agency at any time for any reason," without "giv[ing] rise to any right or process of appeal." D.C. Mun. Regs. tit. 6, § 4000.12-.13. Because the VSA regulations carry the force of law, they bar any reserve officer's claim of entitlement to continued volunteer service arising from a previous MPD General Order or informal understanding, see *Johnson*, slip op. at 1, unless some other regulation or statute compels a contrary conclusion.

The plaintiffs describe their property interest as indeed protected by another D.C. statute, which provides in relevant part as follows:

> [T]he Mayor of the District of Columbia . . . is hereby authorized and empowered to fine, suspend with or without pay, and dismiss any officer or member of [the] police force for [cause] . . . ; provided, that *no person shall be removed from said police force except upon written charges preferred against him* in the name of the Chief of Police of said police force to the trial board or boards hereinafter provided for and after an opportunity shall have been afforded him of being heard in his defense; but no person so removed shall be reappointed to any office in said police force . . . .

D.C. Code § 5-127.01 (2001) (emphasis added). Because the plaintiffs are "persons" within the terms of the statute, they argue, they cannot be removed from their volunteer positions except for cause.

Although the plaintiffs are surely persons, the only persons whom § 5-127.01 protects—as its language makes clear—are "officer[s] or member[s] of [the] police force," who may conceivably be "removed from said police force" or "reappointed to any office in said police force." The question then becomes whether Reserve Corps members are "member[s] of [the] police force" within the meaning of this statute. This question has not yet arisen before the D.C. Court of Appeals, for while *Johnson* found Reserve Corps members to lack a property interest in their continued service, it did not consider the possible application of § 5-127.01.

Lanier argues that volunteer officers are excluded from these protections by a 1906 amendment to the statute, which provided that "special policemen and additional privates may be removed from office by the Mayor without cause and without trial." Act of June 8, 1906, § 4, ch. 3056, 34 Stat. 221, 222 (codified as amended at D.C. Code § 5-127.01). She contends that because these exempted groups were the only categories of volunteer police existing in 1906, the proviso currently applies to all existing categories of volunteer officers. Both in 1906 and today, however, "special policemen" were specifically defined as privately-employed security officers imbued with certain public powers. See Act of Mar. 3, 1899, ch. 422, 30 Stat. 1045, 1057 (codified as amended at D.C. Code § 5-129.02). The term "additional privates" appears essentially synonymous: Rev. Stat. D.C. § 375, 18 Stat. pt. 2, at 44 (1875), had authorized appointment of an "additional number of privates" on the application (and at the expense) of persons showing the "necessity" of such appointment. The other possible referent of "additional privates" is the category of "special privates," who then and today were temporary unpaid police appointed during times of emergency. See *id.* §§ 378-379 (codified as amended at D.C. Code § 5-129.03). At most, then, the 1906 amendment exempted specific groups of volunteer officers, rather than referring to all volunteers

through a general term of art, in the way the Constitution uses "Treason, Felony, or Breach of the Peace" as a term of art referring to all crimes. U.S. Const. art. I, § 6, cl. 1; see *Williamson v. United States*, 207 U.S. 425, 438 (1908). Were this all, we would face the common conflict between the *expressio unius est exclusio alterius* canon and its competing cousin, the contention that statutory language "may fairly comprehend many different cases where some only are expressly mentioned by way of example." Karl N. Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are To Be Construed*, 3 Vand. L. Rev. 395, 405 (1950).

But there are other reasons why § 5-127.01 is not properly read to confer any protected tenure on Reserve Corps members. D.C. statutes concerning the MPD frequently employ phrases similar to "member of [the] police force," and we read a body of statutes addressing the same subject matter *in pari materia*, "as if they were one law," *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 315-16 (2006) (quoting *Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972)), including later-enacted statutes as well, see *Branch v. Smith*, 538 U.S. 254, 281 (2003) (citing *United States v. Freeman*, 44 U.S. (3 How.) 556, 564-65 (1845)). An examination of these statutes shows that Reserve Corps members are not generally treated as "member[s] of [the] police force" under D.C. law.

First, a District statute defines "[t]he Metropolitan Police force" to "consist of not less than 3,000 officers and members, in addition to the persons appointed as surgeons for the Metropolitan Police force, appointed as police matrons, or appointed as special privates pursuant to § 5-129.03 . . . ." D.C. Code § 5-105.05 (2001). Neither this definition nor any other provision of the "Personnel" subchapter of this title includes the Reserve Corps within the definition of the force,

even though this section does include the "special privates" mentioned above.

Second, the opening subsection of the statute governing the Reserve Corps defines its membership in contradistinction to "full-time, sworn police personnel." § 5-129.51(a). MPD "personnel" are separately defined in Subchapter III of Title 5, which assigns to the mayor the power to "appoint to office, assign to such . . . duties as he may prescribe, and promote all *officers and members of* [the] *Metropolitan Police Force*." § 5-105.01 (2001) (emphasis added). Reserve Corps members, by contrast, have their "duties and responsibilities . . . determined by the Chief of the Metropolitan Police Department," § 5-129.51(b); while the Mayor may issue regulations prescribing their duties and responsibilities, § 5-129.51(d), this language implies that Reserve Corps members are not directly included within § 5-105.01's terms. Moreover, the opening subsection of the Reserve Corps statute establishes the Corps as a separate and coordinate body "in the District of Columbia," § 5-129.51(a), rather than creating it "in the *Metropolitan Police Department*," language used for components of the MPD such as the School Safety Division or the Police Band. §§ 5-131.01 (2001), 5-132.02(a) (Supp. 2007) (emphasis added).

Third, the Reserve Corps is created as an organization of "unpaid volunteers." § 5-129.51(b). This language not only makes Reserve Corps members subject to the VSA and its accompanying regulations; it also distinguishes them from the "officers and members of the Metropolitan Police force," who as such *automatically* receive salaries under § 5-541.01 (2001) as well as tuition reimbursements under § 5-1305 (2001). The plaintiffs describe § 5-127.01's civil-service protections as intended to dismantle a spoils system of political patronage, see Griffith Br. 30-33, an intent that seems barely if at all applicable to unpaid positions; the absence of a salary further

differentiates reserve officers from those who may be "suspend[ed] with or without pay" only for cause. § 5-127.01. And at least one federal statute sets Reserve Corps members apart for monetary purposes, allocating money "for salaries and expenses . . . of officers and members of the Metropolitan Police Department . . . (and supplies, equipment, and protective vests for reserve officers of the Metropolitan Police Department)." District of Columbia Police Authorization and Expansion Act of 1989, Pub. L. No. 101-223, sec. 2(a), § 502(c)(2), 103 Stat. 1901, 1901. While the statute evidently presupposes that "reserve officers" are "of the Metropolitan Police Department," it plainly views them, at least for appropriations purposes, as different from "officers and members" of the department, the key phrase from § 5-127.01.

Fourth and finally, under § 5-129.51(c), the "selection criteria required for and training provided to members of the Reserve Corps shall be similar to [those of] full-time, sworn police personnel," and are determined by the Chief of Police, *id*. A different regime is created for the members of the department proper, whereby the Police Officers Standards and Training Board determines selection criteria and training for "[e]ach applicant selected for appointment as a sworn member of the Metropolitan Police Department." D.C. Code § 5-107.04(d) (Supp. 2007). Separate provisions allow the Board to establish standards for the Housing Authority Police Department (an entirely separate force that does not report to the MPD), see §§ 5-107.04(f-1)(3), 6-223 (Supp. 2007), and to "[r]eview the . . . Reserve Corps program's training and standards," § 5-107.04(f-1)(4). These provisions thereby treat Corps members as distinct from members of the department as a whole, and in particular from those "appoint[ed]" as members of the force under § 5-105.01.

Thus, the District's statutes consistently distinguish between Reserve Corps members and the "member[s] of [the]

police force." None of this, of course, appears to limit the potential powers of a reserve officer to "fulfill police duties and responsibilities" as determined by the Mayor and Chief of Police under § 5-129.51(b), (d), including all the duties of full-time officers. But because D.C. law does not generally treat Reserve Corps members as "member[s] of [the] police force" in the sense necessary to protect their tenure under § 5-127.01, these volunteers remain subject to at-will dismissal, and they lack the statutorily-protected property interest necessary to ground a due process challenge.

\* \* \*

The judgment of the district court is therefore

*Affirmed*.